UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.

MAGLISE FRENCH,

                      Plaintiff,                                    COMPLAINT

                - against -

SPECIALTYCARE, INC., and                              PLAINTIFF DEMANDS
CHARLES WALKER, *Individually*,                     A TRIAL BY JUR*Y*

                     Defendants.
------------------------------------------------------------------------X

Plaintiff, MAGLISE FRENCH, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 (the "PDA"), 42 U.S.C. § 2000e(k); the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, et seq. ("ADA"); the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the **New York City Human Rights Law**, New York City Administrative Code § 8-502(a), *et. seq.*, and seeks damages to redress the injuries she has suffered as a result of being **discriminated against on the basis of her disability, gender and pregnancy** and being **terminated** by her employer in **retaliation** for complaining of discrimination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. §12101, *et seq.* and 28 U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and

is an action to recover damages or other relief under an Act of Congress providing for the protection of civil rights.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") on 5/8/2020.

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated 9/24/2020, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

8. Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

## PARTIES

9. At all times relevant, Plaintiff is and was a resident of the State of New York and Kings County.

10. At all times relevant, Defendant SPECIALTYCARE, INC., ("SPECIALTYCARE") was and is a foreign business corporation incorporated in the state of Delaware with its principal headquarters located at 3 Maryland Farms, Suite 200, Brentwood, TN 37027.

11. Defendant SPECIALTYCARE is, and has been at all relevant times herein, a medical support services company that provides various medical resources, including medical care, staffing, data, and other support services to hospitals and other medical facilities.

12. At all times relevant, Defendant SPECIALTYCARE "employs" fifteen or more employees and is thus an "employer" within the meaning of Title VII, ADA, the NYSHRL, and the NYCHRL.

13. At all times relevant, Defendant SPECIALTYCARE operates business pursuant to, by virtue of, the laws of the State of New York and staffs employees, including Plaintiff, to work in the New York-Presbyterian Brooklyn Methodist Hospital located at 506 6th Street, Brooklyn, New York, 11215.

14. At all times relevant, Defendant Charles Walker ("WALKER") is and was an employee of Defendant SPECIALTYCARE holding the position of Clinical Manager.

15. At all times relevant, Defendant WALKER was Plaintiff's manager and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant WALKER is being sued herein in his official and individual capacities.

16. Defendant SPECIALTYCARE and Defendant WALKER are collectively referred to herein as Defendants.

17. At all times relevant hereto, Plaintiff was an employee of Defendants.

18. At all times relevant hereto, Plaintiff and Defendant WALKER worked at the location 506 6th Street, Brooklyn, New York, 11215.

## MATERIAL FACTS

19. On or about December 13, 2015, Plaintiff began working for Defendant SPECIALTYCARE first as a Central Processing Technician earning an hourly rate of $18. Shortly after, Plaintiff was promoted to Lead Sterile Processing Technician earning $24.28 an hour.

20. Defendant SPECIALTYCARE paid Plaintiff an approximate salary of $51,000.

21. During Plaintiff's four years of employment, Plaintiff has always been an above-satisfactory employee and is otherwise qualified to perform the duties of her employment.

22. On or about June 2019, Plaintiff found out she was pregnant.

23. On or about June 2019, Plaintiff informed Defendant SPECIALTYCARE of her pregnancy.

24. Plaintiff also began the process of applying for FMLA leave for her pregnancy and after the birth of a child, further putting Defendants on notice.

25. Plaintiff had a high-risk pregnancy. Per her primary care-doctor orders, Plaintiff was required to limit what she can carry to 10 pounds or less and standing no more than two continuous hours.

26. On or about the last week of July 2019, Plaintiff was approached by the department manager, Defendant WALKER. Defendant WALKER asked to speak to Plaintiff privately.

27. Plaintiff stepped outside with Defendant WALKER to speak with him privately. Defendant WALKER had a smirk on his face and asked Plaintiff if she was pregnant. Plaintiff confirmed. Plaintiff felt very uncomfortable.

28. Defendant WALKER asked Plaintiff who was the father of her baby. Plaintiff was offended. Plaintiff responded that she has a boyfriend, in a relationship with her boyfriend, and that he was the father of her baby. Plaintiff did not understand why Defendant WALKER was asking such invasive and personal questions.

29. Defendant WALKER continued with questions that were increasingly egregious and inappropriate. Defendant WALKER insisted Plaintiff name the identity of the father of Plaintiff's unborn child. Plaintiff responded that she didn't think it was any of Defendant WALKER's business. Defendant WALKER was not deterred.

30. Defendant WALKER continued to press and harass Plaintiff. He started guessing names and asking Plaintiff to confirm or deny his guesses. He then asked Plaintiff if the child's father worked in the same department. Plaintiff felt humiliated and offended.

31. Defendant WALKER then revealed to Plaintiff that someone from the Operations Department shared with him that Plaintiff's baby was fathered by Taniel (last name unknown), a colleague who works in Plaintiff's department. Plaintiff responded that it was not Taniel.

32. Defendant WALKER continued to press and asked Plaintiff one more time whether she was sure it wasn't Taniel (last name unknown) before he finally let the issue go and allowed Plaintiff to leave.

33. The following week, Plaintiff reached out to Defendant SPECIALTYCARE's human resource department ("HR"). Plaintiff reported to HR about the harassing, discriminatory and invasive questions Defendant WALKER directed towards her.

34. HR apologized to Plaintiff and explained that Defendant WALKER had brought up the pregnancy concern to HR, but that he did not handle the concern appropriately and went too far.

35. Plaintiff also learned Defendant WALKER had also approached her colleague, Taniel (last name unknown), and asked whether Taniel (last name unknown) is the father of Plaintiff's child.

36. Plaintiff was a victim of tarnishing office gossip and resulted in Plaintiff feeling severely emotional and mentally distressed.

37. Plaintiff was unfairly mistreated and targeted by management because of her pregnancy.

38. On September 18, 2019, at a staff meeting, Defendant WALKER and Anita (last name unknown) instructed all employees that *every* employee needed to equally work on heavy and light work trays.

39. After the meeting, Plaintiff approached and reminded Defendant WALKER that her doctor restricted her from lifting anything more than 10 pounds, as well as limited to standing no more than two hours on her feet every day because of her pregnancy. Defendant WALKER was dubious and asked whether Plaintiff had a doctor's note stating this restriction.

40. Plaintiff confirmed she had a doctor's note and keeps a copy of the documents listing her restrictions in her locker at work. Plaintiff was under the impression and understanding that Defendant WALKER was made aware of her medical restrictions because he had been back and forth with HR to get Plaintiff's FMLA leave approved.

41. Defendant WALKER requested to see Plaintiff's doctor note placing her on restriction due to her pregnancy which she provided.

42. The next day, on September 19, 2019, Defendants terminated Plaintiff's employment.

43. Plaintiff was emotionally and mentally distraught from Defendants' pregnancy discrimination, hostile work environment, retaliation and wrongful termination. As a result, on October 12, 2019, Plaintiff went into premature labor. Plaintiff was not due until January 2020.

44. Plaintiff was discriminated because of her gender (pregnancy) and her pregnancy related disability.

45. It was clear and apparent that it is more likely than not that the reason for the adverse personnel action, i.e. Plaintiff's employment termination, was based on unlawful discrimination.

46. Defendants had no non-discriminatory reason for terminating Plaintiff's employment.

47. Plaintiff understood her termination to be because of her pregnancy and disability, in addition to her complaints of Defendant WALKER's harassment and discrimination.

48. Plaintiff took this employment termination as retaliation for engaging in a protected activity.

49. Plaintiff made it clear to Defendants that her work restrictions were due only to her pregnancy-related condition.

50. Instead of granting Plaintiff her requested accommodation of a weight lifting limit and limit the period of standing, Defendants discharged Plaintiff.

51. Defendants' discriminatory and retaliatory termination of Plaintiff's employment was due to her pregnancy.

52. Upon information and belief, Defendants are aware of their obligations under the Title VII, Americans With Disabilities Act, The New York State and New York City Human Rights Law(s).

53. Defendants are aware of their legal duty and obligation to engage in an interactive process and to assess an employee's need for accommodations when the employee places Defendants on notice of a medical need/disability, which prevents the employee from continuing to work.

54. Defendants made no assessment of Plaintiff's disability, the needs of her pregnancy and whether any reasonable accommodation can be made.

55. Defendants made no assessment to determine if an accommodation to Plaintiff would cause them undue hardship, difficulty, or expense.

56. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

57. Defendants' actions and conduct were more likely than not that their actions were motivated by a discriminatory intent and intended to harm Plaintiff.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other damages which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

59. Defendants acted intentionally and intended to harm Plaintiff.

60. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

61. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR *DISCRIMINATION* UNDER TITLE VII

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

63. <u>Title VII of the Civil Rights Act of 1964</u>, as amended <u>42 U.S.C.</u> § 2000e(k) provides, in pertinent part, that:

    > The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USCS § 2000e-2(h)] shall be interpreted to permit otherwise.

64. At all times relevant to the Complaint, while employed, Plaintiff endured a discriminatory work environment insofar as Plaintiff was subjected to differential treatment, discriminatory/unfair disciplines, adverse employment actions, scrutiny and other discriminatory/retaliatory actions– due to Plaintiff's pregnancy, gender/sex and disabilities.

65. Defendant SPECIALTYCARE engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices by discriminating against Plaintiff because of her gender (pregnancy).

66. Plaintiff is entitled to the maximum amount allowed under this statute.

## AS A *SECOND* CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

68. <u>Title VII of the Civil Rights Act of 1964</u>, as amended, <u>42 U.S.C. §2000e-3(a)</u> provides that it shall be unlawful employment practice for an employer:

> (1) to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

69. Defendant SPECIALTYCARE engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

70. Plaintiff is entitled to the maximum amount allowed under this statute.

## AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72. Plaintiff asserts that Defendant SPECIALTYCARE violated the <u>Americans with Disabilities Act of 1990</u> (Pub. L. 101-336), as amended.

73. <u>Title 42 of the Americans with Disabilities Act of 1990</u>, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> (a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

74. Plaintiff's high-risk pregnancy qualifies as a disability within the meaning of the ADA.

75. Plaintiff had, and/or Defendant SPECIALTYCARE perceived that she had, a physical or mental impairment that substantially limits one or more of her major life activities.

76. But for Plaintiff's disability, perceived disability and/or need for a reasonable accommodation, Defendant SPECIALTYCARE would not have terminated her employment.

77. Plaintiff has further experienced severe emotional and physical distress.

78. As such, Plaintiff has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A *FOURTH* CAUSE OF ACTION FOR *RETALIATION* UNDER THE AMERICANS WITH DISABILITIES ACT

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. The ADA prohibits retaliation, interference, coercion, or intimidation against employee, who engages in protected activity.

81. 42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or shearing under the chapter.

> Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her or his having exercised or enjoyed, or on account of her or his having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the chapter.

82. Defendant SPECIALTYCARE were aware that Plaintiff was pregnant and that her pregnancy was high risk.

83. This protected activity should put Defendant SPECIALTYCARE on notice that reasonable accommodation should be made for Plaintiff.

84. However, Defendant SPECIALTYCARE did not make any reasonable accommodation for Plaintiff.

85. Defendant SPECIALTYCARE retaliated against Plaintiff by discharging Plaintiff's employment.

86. As such, Plaintiff has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

### AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

88. New York State Executive Law § Executive Law § 296 provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

89. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her disability, pregnancy and gender (female).

90. Further, Defendants ignored Plaintiff's complaints and did nothing to protect Plaintiff against the discriminatory and hostile work environment.

12

91. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

### AS A *SIXTH* CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK STATE EXECUTIVE LAW

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person ***engaged*** in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, opposed, testified, or assisted in any proceeding under this article."

94. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

95. Plaintiff is entitled to the maximum amount allowed under this statute.

### AS A *SEVENTH* CAUSE OF ACTION
### UNDER THE NEW YORK STATE EXECUTIVE LAW
### (*Aider and Abettor Liability - Against Individual Defendant*)

96. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

97. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

98. Defendant WALKER violated the section cited herein as set forth.

### AS AN *EIGHTH* CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

101. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff of her gender and pregnancy, resulting in a failure to grant her request for a reasonable accommodation and Plaintiff's unlawful termination.

102. Plaintiff is entitled to the maximum amount allowed under this statute.

### AS A *NINTH* CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

105. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

106. Plaintiff is entitled to the maximum amount allowed under this statute.

## AS A *TENTH* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
**(*Aider and Abettor Liability - Against Individual Defendant*)**

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

108. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

109. Defendant WALKER engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

110. Defendant WALKER violated the section cited herein as set forth.

## PUNITIVE DAMAGES

111. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

112. As such, punitive damages are appropriate as a result of Defendants' above-described conduct and Plaintiff demands Punitive Damages as against all Defendants.

## JURY DEMAND

113. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the **Title VII of the Civil Rights Act of 1964**, **Americans with Disabilities Act**, **New York State Human Rights Law**, and the **New York City Administrative Code**, in that Defendants discriminated and retaliated against Plaintiff on the basis of her disability,

15

      pregnancy and gender that ultimately resulted in Plaintiff's unlawful termination;

B.     Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State and City-law claims;

D.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.     Awarding Plaintiff punitive damages;

F.     Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
November 13, 2020

                                               **PHILLIPS & ASSOCIATES,**
                                               **ATTORNEYS AT LAW, PLLC**

By:    /s/ Lisa Skruck
       Lisa Skruck, Esq.
       Irene Chan, Esq.,
       *Attorneys for Plaintiff*
       585 Stewart Avenue, Suite 330
       Garden City, NY 11530
       (516) 365-3731
       lskruck@tpglaws.com
       ichan@tpglaws.com